**E-FILED on**   12/1/05

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEGAN MORGAN,<br><br>         Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>         Defendant. | No. C-04-00637 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**I.  INTRODUCTION**

Plaintiff Megan Morgan ("Morgan") brings this action under 42 U.S.C. § 405(g) to obtain review of the Commissioner's decision denying her claim for Social Security disability insurance benefits. On July 11, 2001, Morgan filed a claim for such benefits, alleging that she became disabled on October 29, 1999. Administrative Transcript ("Tr.") 123. On December 7, 2001 the Social Security Administration ("SSA") denied Morgan's application. Tr. 94. The SSA denied her request for reconsideration on August 23, 2002. Tr. 103. An Administrative Law Judge ("ALJ") held a hearing on June 9, 2003. Tr. 32. On June 18, 2003 the ALJ denied Morgan's claim. Tr. 22-31. Morgan requested review by the SSA Appeals Council on July 3, 2003. Tr. 14. The Appeals Council denied Morgan's request on December 12, 2003. Tr. 9-11.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –04-00637 RMW
DOH

1    Morgan filed a complaint in this court on February 17, 2004.  The parties have filed cross-motions
2    for summary judgment.  For the reasons set forth below, the court grants the Commissioner's motion and
3    denies Morgan's motion.

## II. STATEMENT OF FACTS

Morgan is approximately forty years old.  Tr. 123.  She is a high school graduate.  Tr. 140.  She has worked as a restaurant cashier and cook, a car washer and detailer, and at a newspaper loading bundles onto pallets.  Tr. 135, 147.  The ALJ and Morgan agree that her work history involves unskilled jobs in the "light" to "medium" categories.  Mot. at 2; Tr. 28.

Morgan claims that she began to experience joint pain in her back, neck, and legs in September 1998 while working for the newspaper.  Tr. 134-35.  In August 1998, she received treatment at Dominican Hospital in Santa Cruz for a possible ankle fracture.  Tr. 200-03.  Doctors prescribed crutches.  Tr. 201. In April 1999, Morgan sought care at the Santa Cruz County Health Clinic ("the Clinic").  The Clinic assigned her to Dr. Judith Kelley.  Tr. 284-86.  On July 7, 1999 Dr. Kelley took X-rays of Morgan's spine.  The X-rays revealed disc narrowing at C-5/6 with spur formation, degenerative disc changes at C-5/6, a transitional sacralized vertebral body at S-1, sclerosis on both sides of the right sacroiliac joint, and mild spur formation at the L-1/2 level.  Tr. 283.  Dr. Kelley prescribed muscle relaxants, anti-inflammatory drugs, and pain killers.  Morgan began to work as a pizza chef in July 1999.  Tr. 147.

On April 28, 2000 Morgan went to the Clinic to request a disability placard for her car.  Dr. Kelley noted that the cause of Morgan's pain might be chronic fatigue syndrome, "fibromyalgia vs. depression vs. embellishment."  Tr. 276.  On November 28, 2000 Morgan underwent a cervical and lumbar spine MRI. Tr. 260-61.  The cervical MRI revealed "slight narrowing of the discs at C5-6 and C6-7 with moderate posterior bulging of the discs at both levels," a "slightly more focal deformity on the left at C6-7, and "mild broad-based spondylosis . . . at C4-5."  Tr. 260.  The lumbar spine MRI was normal.  Tr. 261.

On April 30, 2001 the Clinic referred Morgan to Dr. Molly Fainstat, a rheumatologist at the Santa Clara Valley Medical Center.  Tr. 243-44.  Fainstat acknowledged that the MRI had revealed "a C-6, 7 disc protrusion in the cervical spine."  Tr. 243.  However, Fainstat determined that Morgan had (1) "full range of motion of the cervical spine," (2) "excellent low back flexion," and (3) "was easily able to touch

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT –04-00637 RMW
DOH                                                                 2

fingers to toes." Tr. 244.  Fainstat concluded that she could not "find a physical reason for the extent" of Morgan's pain.  *Id*.[1]

On July 3, 2001 Morgan and Dr. Kelley had a confrontation.  Tr. 236.  According to Clinic records, Morgan began "yelling" and "acting hostile."  *Id*.  Dr. Kelley offered to refer Morgan to a psychologist, but Morgan "stormed out of the Clinic."  *Id*.  Dr. Kelley reassigned Morgan to Dr. Wendy Leonard.  *Id*.

On September 23, 2001 Dr. Hideki Garren performed a consultative orthopedic evaluation of Morgan for the SSA.  Tr. 287-88.  Dr. Garren diagnosed chronic neck pain with MRI evidence of mild disc disease at C5-6 and C6-7 and chronic low back pain.  Dr. Garren determined that Morgan could (1) lift up to fifty pounds occasionally and twenty-five pounds frequently, (2) stand or walk up to six hours per day, and (3) sit all day.  He limited her to only occasionally stooping, crouching, and bending at the neck and hip and cleared her to perform medium work with appropriate postural limitations.  Tr. 288.

On March 6, 2002 Dr. Leonard signed a Statement of Disability form for General Assistance benefits.  Tr. 355.  Dr. Leonard claimed that Morgan was "permanently disabled" because of "chronic back pain."  *Id*.  On March 7, 2002 Morgan underwent additional X-rays.  Tr. 212-14.  The X-rays revealed (1) bone inflammation in the sacroiliac joints, (2) a sacralized transitional vertebral body in L5, and (3) degenerative disc height narrowing at C5-6 and C6-7 with hypertrophic spurring and sclerosis at the anterior arch of C-1 and the ondontoid.  Tr. 212-14.  On April 1, 2002 Dr. Leonard referred Morgan to a "chronic pain clinic" for further assessment.  Tr. 208.

On November 4, 2002, Dr. Leonard wrote a letter to SSA on Morgan's behalf.  Dr. Leonard asserted that Moran (1) suffers from chronic pain as a "result of the combination of degenerative disc disease of her cervical spine and fibromyalgia," (2) cannot sit in the same position for more than thirty minutes or stand for more than fifteen or twenty minutes without requiring a change in position, and (3) "is unable to maintain gainful employment."  Tr. 352.

On November 6, 2002 and February 2, 2003 Dr. Leonard prescribed Morgan two canes to help with walking.  Tr. 358, 361.  Dr. Leonard also signed Statement of Disability forms on November 6, 2002

---

[1]  Fainstat also noted that Morgan "has a significant prior history," including being treated poorly in a foster home, and opined that her pain might stem from psychological issues.  Tr. 243.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –04-00637 RMW
DOH                                                              3

and May 8, 2003.  Tr. 354, 358.  On May 13, 2003 Dr. Leonard drafted a four-page report that described her treatment history and conclusions with respect to Morgan.  Tr. 348-51.

### III.  LEGAL STANDARDS

To be eligible for Social Security disability benefits, the claimant must be disabled.  "A claimant bears the burden of proving that an impairment is disabling." *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985).  Disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An impairment for purposes of this definition "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  In addition, a person is disabled only if the impairment is so severe as to preclude not only performance of his previous work, but also, considering his age, education, and work experience, performance of "any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The district court's review of the ALJ's decision is limited.  The Secretary's determination denying benefits will be upheld "if it is supported by substantial evidence and is based on the proper legal standards."  *See* 42 U.S.C. § 405(g); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993) (citing *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)).  "The decision will be set aside, however, if the proper legal standards were not applied in weighing the evidence and making the decision even though the findings are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978)).  The Ninth Circuit in *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997), defined "substantial evidence" and described the relevant standard of review:

> Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.  Where the evidence is susceptible to more than one rational interpretation, we must uphold the Commissioner's decision.

*Sandgathe*, 108 F.3d at 980 (internal citations and quotation marks omitted).

1  "Remand for consideration of new evidence is appropriate if a claimant presents evidence that is
2  material to determining disability, and there is good cause for the failure to produce the evidence earlier."
3  *Wainwright v. Sec'y of Health and Human Servs.*, 939 F.2d 680, 682 (9th Cir. 1991). *But cf. Booz v.*
4  *Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (requiring only materiality of new
5  evidence to remand).

## IV.  DISCUSSION

### A.  The Five-Step Sequential Evaluation of Disability

The Commissioner has established a five-step sequential evaluation process to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. If so, the ALJ will find that the claimant is not disabled, and the claim will be denied. *Id.* §§ 404.1520(b), 416.920(b). Second, the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him from performing basic work activities. If not present, the ALJ will find that the claimant is not disabled, and the claim will be denied. *Id.* §§ 404.1520(c), 416.920(c). Third, if the claimant is suffering from such an impairment, the ALJ compares the impairment with those in the Listing of Impairments, and if the impairment "meets or equals" an impairment on the Listing, disability is presumed and benefits are awarded. *Id.* § 404, Subpart P, App. 1; §§ 404.1520(d), 416.920(d). If not, the ALJ must determine, as a fourth step, whether the claimant has sufficient "residual functional capacity" to perform his past relevant work. If the claimant has sufficient residual functional capacity, the ALJ will find that the claimant is not disabled, and the claim will be denied. *Id.* §§ 404.1520(e), 416.920(e). Otherwise, if the claimant meets his burden of showing that he is unable to perform past relevant work, he has established a prima facie case of disability. *See Gamer v. Sec'y of Health and Human Services*, 815 F.2d 1275, 1278 (9th Cir. 1987). In step five, the burden shifts to the Commisioner to prove that the claimant, based on his age, education, work experience, and residual functional capacity, can perform other substantial gainful work. *Id.* §§ 404.1250(f), 416.920(f); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

### B.  The ALJ's Findings

The ALJ first determined that Morgan had not engaged in substantial gainful work since her alleged onset date. Tr. 23. The ALJ noted that Morgan's work record "indicates many years at or below the level

of substantial gainful activity." *Id*.  In addition, the ALJ commented that Morgan testified that she had been fired from her last job, then collected unemployment insurance, and then filed for disability benefits "[w]hen the insurance payments ended." *Id*.

Examining Morgan's ailments in detail, the ALJ found that they were "severe" but not severe enough to meet or equal an impairment listed in Appendix 1, Subpart P, Regulation No. 4.  Tr. 24.  The ALJ noted that Dr. Leonard "opined that [Morgan's] pain is so limiting that she cannot perform any competitive work," but discounted Dr. Leonard's diagnosis on the grounds that "she does not provide an objective explanation for [Morgan's] back, leg, or ankle pain." *Id*.  However, the ALJ did accept Dr. Leonard's opinion as "significant" and "accorded some weight" to Morgan's subjective pain complaints.  Tr. 27.  In addition, the ALJ did not accept Dr. Garren's conclusion that Morgan was capable of "medium work with appropriate postural limitations."  Tr. 26-27.

The ALJ found that Morgan could not return to her past jobs.  Tr. 28.  However, the ALJ concluded that Morgan could perform "light work," including lifting no more than twenty pounds frequently or carrying up to ten pounds.  *Id*.  Relying on the testimony of a vocational expert, the ALJ determined that Morgan "could perform other light work that exists in significant numbers in the local economy," including (1) housecleaning, (2) security work, and (3) cashiering.  *Id*.  Accordingly, the ALJ held that Morgan was not "disabled."

**C.    Whether the ALJ Erred**

    **1.    Rejecting Subjective Pain Testimony Based Solely on Objective Medical Evidence**

Morgan first argues that the ALJ mistakenly deemed her subjective pain testimony only "partially credible."  In the Ninth Circuit, "once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  Instead, the "reason for rejecting the claimant's testimony must be 'clear and convincing,' and supported by specific findings." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (internal citation omitted).  Morgan notes that the ALJ's Finding Number 5 states that Morgan's "allegations regarding her limitations are not totally credible because the objective medical evidence of record does not support them."  Mot. at 12 (quoting Tr. 29).  Morgan also notes that the ALJ found

Morgan's "statements . . . not wholly credible because they are not supported by the objective medical evidence of record or the opinions of other treating, examining, or evaluating physicians." *Id*. (quoting Tr. 27). According to Morgan, these statements illustrate that the ALJ erred by rejecting her subjective pain testimony based on the mere fact it conflicted with objective medical evidence.

This argument lacks merit. For one, the ALJ questioned Morgan's credibility because of a variety of factors—not just the lack of objective medical evidence supporting her assertions of pain. The ALJ noted that Morgan engaged in "unacceptable behavior" with Dr. Kelley after Dr. Kelley would not sign Morgan's authorization for handicapped parking. Tr. 25. The ALJ also commented upon Morgan's spotty work history:

> [Morgan] has not engaged in substantial gainful activity since her alleged onset date. Prior to the alleged onset of disability, [Morgan's] work record indicates many years at or below the level of substantial gainful activity for part of all of those years. [Morgan] testified that [her employment] was terminated [at] her last job and then [she] collected unemployment insurance. When the insurance payments ended, [she] filed for social security disability benefits.

Tr. 23. The ALJ properly considered these variables. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (upholding ALJ's discounting of claimaint's subjective pain testimony based on her "extremely poor work history" and "little propensity to work in her lifetime"). The ALJ also explained that Morgan's claims were "not supported by . . . the opinions of other treating, examining, or evaluating physicians." Tr. 27. This too was proper. *See Thomas*, 278 F.3d at 958-59 (ALJ may consider "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms" when "weighing the claimaint's credibility"). Thus, contrary to Morgan's argument, the ALJ did not reject her testimony based on single piece of evidence.[2]

### 2. Rejecting Subjective Pain Testimony Based on Less than Clear and Convincing Evidence

Morgan also argues that the ALJ improperly failed "to make adequate findings to support the rejection of the pain testimony by missing evidence entirely and by exaggerating the impact of some of the evidence." Mot. at 12-13. For example, according to Morgan, the ALJ mistakenly believed that she had falsely testified that Dr. Leonard prescribed her crutches. Nevertheless, as Morgan admits, "the ALJ did

---

[2] In any event, the ALJ did not completely disregard Morgan's testimony. *See* Tr. 27 ("I . . . accord some weight to the claimant's subjective pain complaints").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –04-00637 RMW
DOH                                                              7

not specifically use this finding to support her rejection of the pain testimony." Mot. at 13. With no link between this testimony and the ALJ's credibility determination, it would be pure speculation to conclude that the ALJ discounted Morgan's credibility based on the testimony about the crutches. In addition, as noted above, other substantial evidence supported the ALJ's conclusion.[3]

### 3. Failure to Articulate Adequate Reasons for Rejecting Dr. Leonard's Opinions

Morgan contends that the ALJ incorrectly rejected Dr. Leonard's opinion that Morgan was disabled. "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Courts give the most weight to treating doctors' opinions. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). An ALJ may only reject a treating doctor's uncontradicted opinion or conclusions for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). The ALJ may reject a treating doctor's opinion when another doctor's opinion contradicts it and the ALJ provides "specific and legitimate reasons" supported by substantial evidence for his decision. *See Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Morgan takes issue with some of the ALJ's reasons for discounting Dr. Leonard's opinion.[4] First, Morgan argues that the ALJ disregarded Dr. Leonard's opinion because "'Dr. Kelley refused to sign disability forms' as requested by Morgan." Mot. at 17 (quoting Tr. 27). Morgan notes that "there is no information in the record[ ] about exactly what the[se] 'disability forms' were." *Id*. However, the ALJ did not conclude that the interaction between Dr. Kelley and Morgan belied Dr. Leonard's opinion. Instead, the ALJ reasoned that it cast doubt on Morgan's subjective pain testimony:

> I have considered all the medical evidence testimony and other evidence of record and find *that claimant's statement that she is disabled is not wholly credible*. From 1999 to July 30, 2001, there are few objective signs or findings that would reasonably support claimant's statements. Her treating physician during that period, Dr. Dr. Kelley, refused

---

[3] Morgan makes a similar argument based on the ALJ's claim that "the medical evidence of record contains no prescription for an assistive device for walking." Tr. 24. Morgan correctly notes that the ALJ's statement was untrue. Tr. 358, 361. However, again, the ALJ did not rely on this point when discounting Morgan's credibility.

[4] Notably, the ALJ did not completely ignore Dr. Leonard's opinion. Instead, the ALJ "accept[ed]" it as "significant," but declined to adopt it wholesale. Tr. 27.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT –04-00637 RMW
DOH                                                      8

> to sign disability forms for the claimant, which apparently led the claimant to find another physician in that clinic.

Tr. 27 (emphasis added). Thus, Morgan's argument is misplaced.

Second, Morgan notes that the ALJ ignored Dr. Leonard's opinion because she "stated that Morgan suffered from fibromyalgia without any supportive evidence." Mot. at 17. Morgan argues that the ALJ overlooks the fact that Dr. Kelley, not Dr. Leonard, first diagnosed her fibromyalgia. However, although Dr. Kelley flagged the possibility that Morgan might suffer from fibromyalgia, she was not convinced, and listed "embellishment" as an equally likely explanation for her symptoms. Tr. 276. In addition, the ALJ also relied on the fact that Dr. Leonard's "diagnosis of fibromyalgia is not supported by any laboratory results and the opinion of the rheumatologist, Dr. Fainstat." Tr. 27. Dr. Fainstat's opinion—that Morgan "had full range of motion of the cervical spine[,] . . . excellent low back flexion[,] and was easily able to touch fingers to toes"—conflicted sharply with Dr. Leonard's. Tr. 244.[5] The ALJ thus articulated convincing reasons for not giving Dr. Leonard's opinion controlling weight.

Third, Morgan objects to the ALJ's classification of Dr. Leonard as a "patient advocate." Tr. 27. However, an ALJ may give less credence to a doctor's opinion on credibility grounds. *See Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996) (discrediting doctor's letter that was "worded in such a way that it [seems to be] an effort by the physician to assist a patient even though there is no objective medical basis for the opinion"). Here, the ALJ expressed skepticism toward Dr. Leonard because no other physician or psychologist echoed Dr. Leonard's opinions about the degree of Morgan's impairment. For example, Dr. Leonard wrote that Morgan's depression made her "unable to concentrate consistently, and ha[ve] difficulty working with others due to unpredictable mood swings." Tr. 352. This caused Dr. Leonard to conclude that Morgan "is unable to maintain gainful employment." *Id*. Although Morgan asserts that Dr. Leonard's opinions are "entirely in line with the findings of the [other] examining and non-examining psychologists," Mot. at 19, no other psychologist contended that Morgan's mental condition prevented her from holding down a job. *Cf.* Tr. 304-05 (Johnson concluding that Morgan suffered from depression but could

---

[5] Morgan correctly notes that while Dr. Fainstat concluded that she "cannot find a physical reason for the *extent* of Ms. Morgan's pain," Tr. 244 (emphasis added), the ALJ summarized Dr. Fainstat's opinion as being that "there were no physical causes of the claimant's pain." Tr. 27. However, these two propositions are not mutually exclusive. At their core, both statements assert that there is no objective medical explanation for Morgan's claimed degree of pain.

generally function adequately); Tr. 320 (classifying Morgan's depression as "mild").  "It is the ALJ's function to resolve conflicts in the evidence." *Booz v. Sec. of Health & Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1983).  By considering a variety of factors, including the objective medical evidence, Morgan's credibility, Dr. Leonard's credibility, and all doctors' opinions, the ALJ's resolution of such conflicts is proper and supported by substantial evidence.

## V.  ORDER

For the foregoing reasons, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

DATED:     12/1/05                                  /s/ Ronald M. Whyte
                                                    RONALD M. WHYTE
                                                    United States District Judge

1  **Notice of this document has been electronically sent to:**

2  **Plaintiff:**
Terrence Lee Hancock    THancockSC@aol.com

3

4  **Counsel for Defendant(s):**
John C. Cusker           john.cusker@ssa.gov
Sara Winslow             sara.winslow@usdoj.gov

5

6  Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

7

8

9
    **Dated:**       12/1/05                              DOH
10                                                    **Chambers of Judge Whyte**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28